IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALFONSO RANDALL,

Defendant.

OPINION AND ORDER

21-CR-28-wmc

The grand jury has charged defendant Alfonso Randall with two counts of being a felon in possession of a firearm. Through counsel, Randall subsequently filed a motion to suppress all evidence obtained from the review by undercover police officers of his two, private Facebook accounts, and the February 23, 2021, search of his home. (Dkt. #41.) After the parties agreed that a hearing was unnecessary, Magistrate Judge Stephen Crocker issued a Report and Recommendation ("R&R") that this court deny Randall's motion to suppress. (Dkt. #58.) Randall has now objected to the R&R (dkt. #59), and having reviewed the record and Judge Crocker's thorough reasoning, the court will overrule those objections, accept the R&R, deny his motion to suppress, and set this matter for a scheduling conference with Judge Crocker.

## BACKGROUND[1]

Randall is a self-styled community activist, based in Janesville, Wisconsin, and particularly interested in addressing racism within the Janesville Police Department

[1] The material facts underlying the charges in this case, as well as those, additional facts offered in Randall's motion to suppress, are undisputed and set forth in detail in the R&R. The court accepts those facts and provides this abbreviated set of facts as background to provide context in considering Randall's objections to the R&R.

("JPD"). As of February 2021, Randall was the administrator of two Facebook pages, one for his personal page and the other for the "New Black Panther Party Janesville WI." Randall set up both pages' privacy settings so that others could only access the content of those pages with his permission. To gain access, JPD officers created "ghost" Facebook accounts, prompting Randall to grant one account access to his personal page and the second account access to the New Black Panther Party page.

On February 20, 2021, Randall recorded a traffic stop by the JPD involving a Black motorist, during which Randall confronted the officers verbally and accused them of being prepared to draw a firearm. Following that confrontation, Randall went back to his house, where three JDP officers arrived to charge him with disorderly conduct and obstructing an officer in the course of his official duties. While presenting Randall with a summons based on these charges, the officers also reportedly noticed the smell of marijuana coming from inside his residence. One of the officers present at the original videotaped confrontation later reported that Randall smelled of marijuana at that time as well.

After being served with the summons, Randall proceeded to upload the recording of the traffic stop to the Black Panther Party Facebook page, and the JPD officer with access to the account viewed the video. Unfortunately for Randall, the end of that video showed him standing inside his residence, displaying a black handgun, and speaking about fighting back against the police. The officer forwarded the same video to JPD Officer Hollingshead. The next day, the officer with access to Randall's personal Facebook account forwarded Officer Hollingshead another video that he had uploaded to his personal account. That

video was date-stamped "2-9-21," and it showed Randall and his stepson at a gun range holding two handguns, as well as Randall firing both handguns.

Knowing that Randall was a convicted felon, Officer Hollingshead prepared an affidavit on February 23, 2021, in support of an application for a search warrant, stating in part that: (1) he was attaching the two Facebook videos showing Randall with firearms; (2) Randall was a felon; (3) the officer who interacted with Randall on February 20 reported he "smelled of marijuana"; and (4) the officers who later interacted with Randall outside his residence also smelled the odor of marijuana coming from his residence. Accordingly, the application for a warrant asked to search his residence for evidence of Randall's possession of THC and possession of a firearm as a convicted felon.

That warrant was issued and executed the same day as the application, and one of the charged firearms was found and seized. Randall was later arrested, and during questioning, made additional, self-incriminating statements.

Randall now moves to suppress the Facebook videos and all evidence subsequently obtained from accessing those videos. Judge Crocker recommends denying the motion for two reasons. First, Randall failed to challenge the government's evidence establishing probable cause to search his residence for evidence of marijuana trafficking, which would have inevitably led to the discovery and seizure of the firearm under the plain view doctrine. Second, since police are permitted to engage in deceitful conduct, the undercover officers' conduct in creating ghost Facebook accounts to gain access to Randall's Facebook accounts did not violate his Fourth Amendment rights.

OPINION

Under 28 U.S.C. § 636(b)(1), the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," subject to appropriate deference with respect to his findings of credibility made during the evidentiary hearing. *See McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665 (7th Cir. 2021). In turn, Randall objects to Judge Crocker's opinion, arguing that neither of his justifications for denying the motion to suppress withstand scrutiny. For the reasons explained below, this court simply disagrees.

*First*, Randall objects to Judge Crocker's finding that the warrant was supported by probable cause due to the scent of marijuana alone, and thus, the firearms were admissible under the plain view doctrine. In particular, Randall contends that the police "only arguably" had probable cause to search the residence for *possession* of marijuana, which counsel describes as "at most a misdemeanor, and more likely a non-crime," and have not established that any firearm was in "plain view." (Obj. to R&R (dkt. #59) 2.) In so arguing, plaintiff simply ignores Judge Crocker's acknowledgement that *at some point* the trend to legalize CBD and hemp-derivative products *may* well impact the probable cause determination, but that point has not yet arrived. Regardless, Judge Crocker explained, and plaintiff does not dispute, that the law is still settled in this circuit as to the smell of burnt marijuana alone providing probable cause for a search. (R&R (dkt. #58) 5 (citing *United States v. Kizart*, 967 F.3d 693, 695-96 (7th Cir. 2020)). For that reason, the court agrees with Judge Crocker's conclusion that "even if this court were to redact from the warrant application all references to the Facebook videos showing Randall in possession of

firearms, it would not quash the warrant because there still would be probable cause to search Randall's home for marijuana-related evidence." (*Id.* at 6 (citing *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016)).) To that, the court adds that even if it were to find, after the fact, a suspicious smell of marijuana were not enough to support the warrant, the officers still had a good faith basis to find it sufficient at the time, precluding suppression on that basis. *United States v. Kienast*, 907 F.3d 522, 527 (7th Cir. 2018) ("[E]xclusion is not appropriate where the police act with an objectively reasonable good-faith belief that their conduct is lawful.") (internal quotation marks and citations omitted).

Relatedly, Randall briefly challenges Judge Crocker's invocation of the plain view doctrine with regard to the seizure of any weapons found during execution of a valid warrant to seize marijuana. Correctly pointing out that the record does not indicate *where* in the house the guns were located and that Judge Crocker did not hold an evidentiary hearing to definitively establish their locations, Randall still does *not* raise a meaningful argument or offer evidence that the guns were somehow located somewhere in the residence where marijuana could not also have been found. *See United States v. McGill*, 8 F.4th 617, 622 (7th Cir. 2021) (officers may seize property if "(1) the officer is lawfully present at the place of the seizure, (2) the seized object is in plain view of the officer, and (3) the incriminating nature of the object is immediately apparent").[2]

[2] Although not part of the record, the government's proffer -- that officers found the firearms under a chair, under an entertainment center and on top of a kitchen cabinet (Gov't Reply to R&R (dkt. #60) 2) -- has not been contradicted by defendant and obviously corroborate Judge Crocker's reasonable supposition.

Rather, Randall sidesteps this response by raising his *second* objection: that the plain view doctrine only applies if law enforcement has a legitimate justification for a search in the first place. This brings Randall back to his original challenge to law enforcement's viewing of his Facebook pages under the guise of being someone else, arguing as he did to Judge Crocker that this rendered his consent to their viewing his Facebook pages invalid. To begin, Randall's objection all but ignores Judge Crocker's well-reasoned analysis, which is worth briefly reiterating. In particular, Judge Crocker persuasively distinguished Randall's circumstances from facts in the case before the Seventh Circuit on which he relies. In *United States v. Serlin*, 707 F.2d 953 (7th Cir. 1983), government agents met with the defendant and affirmatively misrepresented that he was not the subject of a tax fraud investigation. *Id.* at 956. Randall claims that like the defendant in *Serlin*, he can show that the JPD officers: (1) affirmatively misled the defendant as to the nature of their investigation; and (2) this misinformation was material in the decision to speak with the agent. However, as Judge Crocker explained, Randall's circumstances are readily distinguishable because the officers in *Serlin* were not *undercover* as they were here. Therefore, the validity of Randall's consent is governed by the principle articulated in *United States v. Thompson*, 811 F.3d 944 (7th Cir. 2016), finding "it is firmly established that the government may use informants and that an informant's failure to disclose his true identity does not render consent to his presence invalid." *Id.* at 948. Judge Crocker further rejected Randall's attempt to distinguish *Thompson* on the ground that inviting a flesh-and-blood informant into a physical space is different from accepting a Facebook

user's request for access, since the law does not recognize that distinction.[3] If anything, most would view the act of granting an unknown individual access to your Facebook page based on a false identification *far less* intrusive than admission into one's home, especially since, unlike one's physical home, multiple avenues allow virtual hacking, and once in, even an *invited* visitor can readily appropriate and share content with others.

Regardless, Randall has again failed to even acknowledge Judge Crocker's reasoning, much less provide contrary authority or develop some argument suggesting that the court should find a *heightened* privacy interest with respect to his Facebook accounts. Instead, Randall's objection consists in large part of a cut-and-paste from his reply brief to Judge Crocker, which is no more persuasive to this court than it was to Judge Crocker. *See United States v. Wescott*, 576 F.3d 347, 356 (7th Cir. 2009) (unsupported and undeveloped arguments are waived).

Finally, as Judge Crocker also observed, even assuming JDP officers underlying motivation for infiltrating his Facebook accounts was to retaliate for his political activism, such retaliation may be grounds for a civil suit, but not suppression. (R&R (dkt. #58) 9-10 (citing *Archer v. Chisholm*, 870 F.3d 603, 618-19 (7th Cir. 2017); *United States v. Soybel*, 13 F.4th 584, 594 (7th Cir. 2021)). Accordingly, the court overrules Randall's objections, accepts Judge Crocker's R&R, and must deny Randall's motion to suppress.

[3] The court also sees no reason to distinguish between an informant and undercover officer since there is nothing before the court to suggest that the officers' actual review of the Facebook profiles exceeded the "scope of the invitation." *See United States v. Shelton*, 997 F.3d 749 765-66 (7th Cir. 2021) (undercover officer acts illegally when the agent obtains information unrelated to the purpose "contemplated by the occupant").

ORDER

IT IS ORDERED that:

1) Defendant Alfonso Randall's objections to the report and recommendation (dkt. #59) are OVERRULED.

2) The Magistrate Judge's report and recommendation (dkt. #58) is ADOPTED, and Randall's motion to suppress (dkt. #41) is DENIED.

3) This matter is set for a scheduling conference with Magistrate Judge Crocker on July 19, 2022, at 9:00 a.m.

Entered this 12th day of July, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge